# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

|                                   |   |                                          |
|-----------------------------------|---|------------------------------------------|
| ROBERT L. MACKEY,                 | : |                                          |
| Petitioner,                       | : | Case No. 3:09cv00255                     |
| vs.                               | : | District Judge Walter Herbert Rice       |
|                                   |   | Magistrate Judge Sharon L. Ovington      |
| TIM BRUNSMAN, Warden,             | : |                                          |
| Lebanon Correctional Institution, |   |                                          |
|                                   | : |                                          |
| Respondent.                       |   |                                          |
|                                   | : |                                          |

## REPORT AND RECOMMENDATIONS[1]

## I. Introduction

Petitioner Robert L. Mackey is an inmate in state custody in the Lebanon Correctional Institution in Lebanon, Ohio pursuant to a criminal judgment of conviction and sentence imposed upon him by the Clark County, Ohio Court of Common Pleas. (Doc. #1 at 1). Mackey brings this case through counsel seeking a Writ of Habeas Corpus under 28 U.S.C. §2254. He claims, in general, that his incarceration is in violation of his rights under the United States Constitution.

The case is before the Court upon Respondent's Motion to Dismiss Habeas Petition as Time Barred (Doc. #4), Mackey's Response and Affidavit (Doc. #s 7, 9), Respondent's Reply (Doc. #10), Mackey's Motion to Clarify His Response to Respondent's Motion to Dismiss the Habeas Petition as Time Barred; Motion to Strike

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

and/or in the Alternative, to File a Surreply (Doc. #11), Respondent's Response (Doc. #12), and the record as a whole.

## II. Procedural History

At the conclusion of Mackey's state trial, the jury found him guilty of one count of trafficking crack cocaine in violation of Ohio Rev. Code §2925.03 with the specification that the offense was committed within 100 feet of a schoolyard; one count of possession of crack cocaine in excess of 100 grams in violation of Ohio Rev. Code §2925.11 with a major drug offender specification; one count of possession of powder cocaine in an amount less than five grams in violation of Ohio Rev. Code §2925.11; one count of having a weapon while under a disability in violation of Ohio Rev. Code §2923.13; and one count of possession of criminal tools in violation of Ohio Rev. Code §2923.24. (Doc. #4, Exhibits 3-4, 7-8).

On September 3, 1998, the trial court entered a criminal judgment against Mackey and sentenced him to a total mandatory prison term lasting twenty-eight years. *Id.*, Exh. 1.

Mackey, through counsel, filed a direct appeal in the Ohio Court of Appeals. The Ohio Court appointed new counsel to represent Mackey but his new counsel failed to file a timely, or any, brief. The State of Ohio filed a motion to dismiss. On February 25, 1999, the Ohio Court of Appeals dismissed Mackey's direct appeal for failure to prosecute. (Doc. #4, Exhs. 9-10, 13 at 1-2). Mackey did not challenge the dismissal by appealing to the Ohio Supreme Court, although he asserts in the instant case that neither his appellate counsel nor the Ohio Court of Appeals informed him about the dismissal. (Doc. #9).

More than eight years later, on September 12, 2007, Mackey, through new counsel, filed in the Ohio Court of Appeals, under Ohio R. App. P. 26, a Motion to Reopen Appeal and/or for Reconsideration of its Decision and Final Judgment Entry Dismiss the Appeal;

Motion to Appoint Effective Counsel to Represent Appellant in His (Reopened) Appeal. (Doc. #4, Exh. 11). The Ohio Court of Appeals issued a Decision and Entry on June 11, 2008 denying Mackey's Motion to Reopen as untimely filed. *Id*., Exh. 13. In doing so, the Ohio Court of Appeals described the elements supporting a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1986), among other cases. The Court of Appeals then explained:

> Mackey's appointed counsel's conduct fell below an objective standard of reasonableness. As indicated above, Mackey's appointed counsel failed to file a brief on his behalf, resulting in the dismissal of Mackey's appeal for want of prosecution and the lack of a review on the merits. We do not agree, however, that the lengthy delay in the filing of Mackey's application to reopen was excused by his indigency, the fact that he had appointed counsel, or the fact that his appeal was dismissed without a review on the merits.
>
> \* \* \*
>
> ... Mackey states that his appointed counsel did not communicate with him, did not inform him of her failure to file a brief, did not inform him that the appeal had been dismissed, and subsequently refused to return phone calls from his mother. While these facts may excuse – for a period of time – the failure to file a timely application to reopen, this 'good cause' does not last indefinitely. As argued by the state in opposition to Mackey's application, 'once Appellant realized that his appeal was not progressing as it should, Appellant should have acted....

(Doc. #4, Exh. 13 at 3-4).

Mackey, through counsel, sought further review in the Ohio Supreme Court. (Doc. #4, Exhs. 14-16). On October 15, 2008, the Ohio Supreme Court dismissed Mackey's appeal "as not involving any substantial constitutional question." *Id*., Exh. 17.

### III. <u>Mackey's Federal Habeas Case</u>

On July 7, 2009, Mackey, through counsel, filed the instant federal habeas case raising fifteen grounds for relief asserting various violations of his rights under the United States Constitution including, for example, "Petitioner was denied effective assistance of

3

counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution due to the fact that his appointed counsel failed to file a merit brief or otherwise prosecute Petitioner's direct criminal appeal of right, resulting in its dismissal by the state court of appeals." (Doc. #1 at 5).

Upon the initial review of Mackey's Petition under Rule 4 of the Rules Governing Habeas Corpus Cases, it appeared that his Petition might be barred by the applicable statute of limitations. However, Mackey asserted in his Petition that equitable tolling applied and negated any statute of limitations bar. The undersigned directed Respondent to file a Memorandum addressing this issue and permitted Petitioner time to file a Response.

The parties' have now fully briefed their positions on the issues concerning the applicable statute of limitations and equitable tolling.

In support of his Memorandum, Mackey states the following in his affidavit:

1. I am the Petitioner....

2. On or about February 25, 1999, the Ohio Court of Appeals for the Second District dismissed my direct criminal appeal of right....

3. My appellate counsel, Cozette Snead, did not notify me of the dismissal of my appeal nor did she send me a copy of the Court's decision.

4. The Court of Appeals did not send me a copy of its decision dismissing my appeal nor did it otherwise notify me of the dismissal.

5. I was under the impression that my appeal could take months or years to complete, and I did not suspect that Ms. Snead had abandoned my appeal altogether, nor did I suspect that the Court of Appeals had dismissed my appeal during the first several months of 1999.

6. I did write letters to Ms. Snead in May and June 1999, expressing my frustration with her for not providing me with regular updates on the status of my appeal.

7. I did not discover the fact that my appeal had been dismissed until long

> after 90 days had passed to file a Rule 26(B) motion to reopen my appeal, and of course, long after the 45 days had passed to file an appeal of the dismissal to the Ohio Supreme Court.
>
> 8. I was not familiar with Ohio App. R. 26(B) nor was I aware of the procedures under that rule until I spoke with an attorney who was representing my brother in a Warden's appeal of this Court's decision in <u>James v. Brigano</u> in the Sixth Circuit Court of Appeals. The attorney indicated that she would be willing to file a delayed motion to reopen the appeal *pro bono* as soon as her schedule permitted.
>
> 9. I was not aware of any procedure for filing a delayed appeal to the Ohio Supreme Court nor did I learn that it was possible to do so until I spoke with the attorney referenced above in paragraph 6.
>
> 10. I was 17 years old at the time the State claimed that the alleged offenses occurred with which I was charged in the Clark County Common Pleas Court in Case No. 97-cr-0318.
>
> 11. I did not possess a high school education at the time my appeal was dismissed on or about February 25, 1999. I obtained my GED while incarcerated on December 15, 1999.
>
> 12. During my initial incarceration, I was wearing a colostomy bag due to serious internal injuries resulting from gun shot wounds. I required corrective surgery which I underwent on or about Dec. 2000 to remove the colostomy bag.

(Doc. #9).

## IV. Discussion

### A. Is Mackey's Petition Time Barred?

Respondent contends that Mackey's habeas Petition is time barred by the applicable one-year statute of limitations.

The Antiterrorism and Effective Death Penalty Act of 1996 (the AEDPA) requires a state prisoner to file his or her habeas corpus Petition within one year from the conclusion of his or her state appeal. 28 U.S.C. §2244(d)(1). This one-year period begins

to run from the latest of:

>    (A)   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>    (B)   the date on which the impediment to filing an application created by State action in violation of the Constitution ... is removed;
>
>    (C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable...;
>
>    (D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2244(d)(1).

The AEDPA permits tolling of its one-year statute of limitations as follows:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. §2244(d)(2).

On February 25, 1999, the Ohio Court of Appeals issued its decision dismissing Mackey's direct appeal of his convictions. *See* Doc. #4, Exh. 10. Under the Ohio Supreme Court Rules of Practice, Mackey had 45 days to file a notice of appeal in the Ohio Supreme Court. *See* Ohio S.Ct. R. Pract., Rule II, §2(A). Consequently, Mackey had until April 11, 1999 to perfect his appeal in the Ohio Supreme Court. He did not do so. As a result, his convictions became final for statute-of-limitations purposes – and thus began running – on April 12, 1999. *See* 28 U.S.C. §2244(d)(1)(A).

The statute of limitations ran for more than one year before Mackey took any further action in the Ohio courts. Indeed, more than eight years passed before Mackey filed his Motion for Delayed Appeal on September 27, 2007. Mackey's Motion for Delayed Appeal did not restart the statute of limitations. *See Searcy v. Carter*, 246 F.3d

515, 519 (6th Cir. 2001)(AEDPA's statute of limitations is not "retriggered" by denial of a Motion for Delayed Appeal). Consequently, his present habeas Petition is time barred.

Mackey contends that his convictions did not become final on April 12, 1999 because the circumstances he faced – certain state created impediments to timely filing under §2244(d)(1)(B) – require the conclusion that his convictions did not become final until after the conclusion of the state proceedings concerning his Motion for Delayed Appeal under Ohio Rule 26(B). Mackey reasons:

> The wrongful dismissal of Petitioner's direct appeal of right, the failure of court-appointed counsel to file a brief, and failure of either the court or counsel to notify Petitioner of the dismissal, constitutes a state impediment to Mr. Mackey's ability to exhaust his state remedies – which, in turn, is a prerequisite to filing a federal habeas petition.... The limitations provision set forth in §2244(d)(1)(B) has been found to apply in cases where the petitioner has alleged that his counsel was ineffective in perfecting or pursuing an appeal requested by him and such ineffectiveness actually prevented the petitioner from filing a timely habeas petition.

(Doc. #7 at 4)(citations omitted).

Respondent argues that any ineffective assistance provided by Mackey's appellate counsel on his direct appeal does not constitute "State action" as required by §2244(d)(1)(B). This contention lacks merit.

"The ineffective assistance of ... initial appellate counsel constitutes state action." *Winkfield v. Bagley*, 66 Fed. Appx. 578, 582 (6th Cir. 2003)(quoting parenthetically *Murray v. Carrier*, 477 U.S. 478, 489, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)("[I]f the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the State.") (other citation omitted). Relying in part on two United States Supreme Court cases, Respondent argues, "assigned counsel are not to be ranked as 'state actors' in the criminal justice system." (Doc. #10 at 6). Respondent's two cases – *Vermont v. Brillon*, __U.S.__, 129 S.Ct. 1283, 173 L.Ed.2d 231 (2009) and *Polk County v. Dodson*, 454 U.S.312, 324-25, 102 S.Ct. 445,

7

70 L.Ed.2d 509 (1981) – at most support the rule that court-appointed counsel is not generally considered to be a state actor. *See, e.g., Brillon*, __U.S. at __, 129 S.Ct. at 1291 ("assigned counsel ordinarily is not considered a state actor."). Yet neither *Brillon* (a Speedy Trial Act case) nor *Dodson* (a civil rights case under 42 U.S.C. §1983) involved consideration of whether a federal habeas corpus petition was timely filed under 28 U.S.C. §2244(d)(1)(B). Respondent does not point to a Supreme Court case extending the no-state-action holdings in *Brillon* or *Dodson* to a federal habeas corpus case. In other words, Respondent has not identified a Supreme Court case holding that a court appointed appellate counsel's constitutional ineffectiveness on direct appeal of a criminal conviction does not constitute "State action" within the meaning of 28 U.S.C. §2244(d)(1)(B). Because the United States Court of Appeals has found – at least in an unpublished case – the occurrence of state action in this situation under §2244(d)(1)(B), *see Winkfield*, 66 Fed. Appx. at 582, Mackey has sufficiently demonstrated that his court-appointed counsel on direct appeal engaged in state action within the meaning of §2244(d)(1)(B).

Having benefitted from this aspect of *Winkfield*, however, Mackey must likewise live with its more detrimental impact on his habeas case. This appears in *Winkfield*'s discussion of causation:

> 'Section 2244(d)(1)(B) requires a causal relationship between the unconstitutional state action and being prevented from filing the petition.' In this case, Winkfield has not alleged that Warner erroneously informed him that he had no federal remedies. No connection has been established between Warner's ineffective assistance and Winkfield's ability to file a federal habeas petition.... Therefore, Winkfield has failed to 'allege facts that establish that he was so inhibited by the state's action that he was unable to file and state a legal cause of action before the limitations period expired.'

*Winkfield*, 66 Fed. Appx. at 582-83 (citations omitted).

Mackey essentially alleges that his appellate counsel abandoned his direct appeal

8

without informing him about the abandonment and without notifying him that the Ohio Court of Appeals dismissed his direct appeal on or about February 25, 1999. Mackey asserts that neither his appellate counsel nor the Ohio Court of Appeals sent him a copy of decision dismissing his direct appeal. Mackey explains that he was under the impression that his direct appeal could take months or years to complete. (Doc. #9).

Mackey's allegations and explanation could provide a basis for finding that his counsel's abandonment caused his failure to pursue a timely direct appeal. But the problem Mackey has not overcome is extreme length of time he waited – more than eight years – before taking any action in the Ohio Courts. By not pursuing his appeal for more than eight years, Mackey simply waited too long to act and the delay became attributable to him rather than to the impediment created by his appellate counsel. Mackey attempted to communicate with his appellate counsel by letter in May and June of 1999 expressing his frustration with her for not providing him with regular updates on the status of his appeal. (Doc. #9 at ¶6). Mackey does not indicate whether or not his appellate counsel responded to these letters. Even assuming she did respond, Mackey has not alleged that she provided him with misinformation or advice that prevented him from further pursuing his direct appeal. Instead, Mackey sat for too many years taking no action whatsoever even though he had not heard a word from his appellate counsel or the Ohio Court of Appeals. As in *Winkfield*, Mackey "has failed to 'allege facts that establish that he was so inhibited by the state's action that he was unable to file and state a legal cause of action before the limitations period expired.'" *Winkfield*, 66 Fed.Appx. at 583 (citation omitted).

Mackey contends, "The limitations provision set forth in §2244(d)(1)(B) has been found to apply in cases where the petitioner has alleged that his counsel was ineffective in perfecting or pursuing an appeal requested by him and such ineffectiveness actually prevented the petitioner from filing a timely habeas petition." (Doc. #7 at 5)(citing numerous cases). Mackey's situation differed significantly from the circumstances in the

9

cases he cites because he knew about his right to appeal and he knew that his appellate counsel had begun the appellate process. His knowledge of this, the complete lack of communication from counsel, and the frustration he felt at the time of his letters to counsel in May and June 1999 reveal that he had sufficient information to alert him of the need to take some further action. Despite his knowledge Mackey waited eight years to file his Motion to Reopen Appeal, and consequently, he failed to act reasonably and diligently. *Cf. Woods v. Jackson*, 2006 WL 746293 at *5 (S.D. Ohio, Mar. 22, 2006)(Spiegel, D.J.)(petitioner acted reasonably and diligently by discovering appellate counsel's mistake and by seeking assistance with his appeal within about a year and six months of his conviction.).

Mackey next points out that during his sentencing proceedings he was not informed of the five-year mandatory term of post-release control. Because of this, Mackey argues, the judgment of conviction entered against him is a nullity under Ohio law and, in turn, is not a final judgment. This contention lacks merit for two reasons: First, there is a valid final judgment of conviction under which Mackey is incarcerated. (Doc. #4, Exhibit 8). The Ohio courts have neither addressed nor found Mackey's judgment of conviction to be a nullity under Ohio law. Second, the judgment of conviction itself informs Mackey that he must serve a mandatory term of post release control lasting up to five years. *Id*. at p. 3. The judgment therefore appears not to be a nullity under the Ohio cases Mackey cites.

Accordingly, the AEDPA's one-year statute of limitations bars Mackey's federal habeas Petition unless equitable tolling applies.

### B. Does Equitable Tolling Reinvigorate Mackey's Petition?

Mackey contends that equitable tolling applies and excuses any untimely filing. He reasons that he could not have totally exhausted his state remedies because the Ohio Court of Appeals wrongly dismissed his direct appeal without giving him actual notice

10

and causing him to miss the deadline for filing a further appeal or a Motion to Reopen Appeal. Mackey also contends, "The damage that has been done to Mr. Mackey by state procedural obstacle is not quantifiable. He was a 17 year-old child who, immediately after the jury returned its verdict, was sentenced to maximum, consecutive sentences on five counts, resulting in a 28-year aggregate sentence for non-violent drug-related offenses. Moreover, he was already serving a 10-year sentence for very recent prior state drug conviction at the time...." (Doc. #7 at 27). Mackey also contends that sending a letter to the Ohio Court of Appeals would have been futile.

"Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003). Various factors are considered: "(1) lack of actual notice of filing requirement; (2) lack of constructive knowledge of filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement." *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003) (quoting *Andrews v. Orr,* 851 F.2d 146, 151 (6th Cir. 1988)).

Equitable tolling does not rescue Mackey's untimely habeas Petition because the record contains no indication that he lacked either actual or constructive knowledge of the AEDPA's limitation period. In addition, Mackey acted unreasonably and without diligence by waiting eight years before taking any action in the Ohio courts. Although he was young and had not graduated from high school at the time of his convictions, he was able to write letters as shown by the letters he wrote to his appellate counsel in May and June 1999. (Doc. #9). Mackey's contention that writing a letter to the Ohio Court of Appeals would have been futile is unavailing. Such a letter, if timely sent, would have at least provided him more information about his appeal. Even if he did not receive a response from the Ohio Court of Appeals, he would have known that a problem existed and he could have then proceeded further with additional letters and/or motions, instead

11

of waiting so many years to take further action. And, lastly, the length of Mackey's delay indicates that he has not been diligent in pursuing his federal habeas claims in this Court.

### C. Summary

For the above reasons, equitable tolling does not assist Mackey in avoiding the AEDPA's one-year statute of limitations, and the AEDPA's one-year statute of limitation bars Mackey's federal habeas corpus Petition.

The matters addressed in Mackey's Motion to Clarify, Motion to Strike and/or Motion to File Surreply (Doc. #11) concern issues either addressed herein or are otherwise moot in light of the conclusion that Mackey's Petition in time barred. These Motions must therefore be denied.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Robert L. Mackey's Petition for Writ of Habeas Corpus (Doc. #1) be DENIED;

2. Petitioner's Motion to Clarify His Response to Respondent's Motion to Dismiss the Habeas Petition as Time Barred; Motion to Strike and/or in the Alternative, to File a Surreply (Doc. #11) are DENIED;

3. A certificate of appealability under 28 U.S.C. §2253(c) not issue; and

4. The case be terminated on the docket of this Court.

March 17, 2010

          s/ Sharon L. Ovington
          Sharon L. Ovington
         United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).